# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 18 2020, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.C. (Minor Child) <br><br> and <br><br> R.C. (Father), <br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner* | September 18, 2020 <br><br> Court of Appeals Case No. 20A-JT-545 <br><br> Appeal from the Switzerland Circuit Court <br><br> The Honorable W. Gregory Coy, Judge <br><br> Trial Court Cause No. 78C01-1905-JT-6 |

**Crone, Judge.**

## Case Summary

[1] In this appeal, R.C. (Father) challenges the sufficiency of the evidence to support the termination of his parental relationship with his daughter, J.C. (Child). We affirm.

## Facts and Procedural History

[2] Child was born in September 2007. For the first few months of Child's life, Father resided with her and her mother, A.R. (Mother). Father moved out and was not the custodial parent. He did not have significant contact with Child during Child's early years. In July 2017, the Indiana Department of Child Services (DCS), acting on a report of Mother's drug use and neglect and Father's inability to protect Child, filed a petition to have Child adjudicated a child in need of services (CHINS). Child was removed from Mother. Father was addicted to drugs, lacked a suitable home, and was in need of mental health treatment. Child initially was placed in relative care with her stepfather but later was moved into foster care. Father was transported to court from jail

for the initial hearing and admitted to the CHINS allegations. The trial court issued an order designating Child a CHINS.

[3] In August 2017, the trial court issued a dispositional order pursuant to which Father was required to maintain safe and stable housing; refrain from criminal activity; refrain from the use, manufacture, or distribution of any illegal controlled substances; submit to drug screens; participate in and complete services, including substance abuse and mental health treatment as well as therapeutic visits with Child and an intensive family preservation program; and attend all scheduled visits with Child. Throughout the pendency of the CHINS case, Father was in and out of jail. When he was not incarcerated, he lived in Hamilton County, Ohio. He did not participate in his court-ordered services and was noncompliant with the case plan. DCS conducted family meetings monthly, and Father attended two or three of the thirty meetings during the pendency of the proceedings. In July 2018, the trial court approved a concurrent permanency plan of reunification and adoption by the foster family.

[4] In January 2019, Father was released from incarceration and indicated a renewed willingness to participate in services. DCS referred Father for therapy, case management, and supervised visitation. He did not initiate visitation or participate in any services. In March 2019, he moved from Ohio to Florida with a fifteen-year-old female. He did not notify DCS concerning this move. Shortly thereafter, he was arrested in Florida and charged with six felony counts of lewd and lascivious battery (including sexual intercourse and oral sex) with a person between at least twelve but under sixteen years of age. He did not

notify DCS of these criminal charges, and DCS learned of them through an online court records database. He also had an active arrest warrant in Ohio for felony interference with custody. The warrant was forwarded to Florida, with extradition expected after the resolution of the Florida cases.

In May 2019, DCS filed a petition to terminate Father's and Mother's parental relationships with Child. Father was served at the Florida jail where he was awaiting trial and participated telephonically in the January 2020 factfinding hearing. In February 2020, the trial court issued an order terminating Father's and Mother's parental rights.[1] Father now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Father contends that the trial court erred in terminating his parental relationship with Child. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).* "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or

---

[1] Mother is not participating in this appeal, and her circumstances will be addressed only where relevant to Father's case.

the conclusions do not support the judgment." *In re A.G.*, 45 N.E.3d 471, 476 (Ind. Ct. App. 2015), *trans. denied* (2016). Unchallenged findings stand as proven. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. In conducting our review, we neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

[7] "Parents have a fundamental right to raise their children – but this right is not absolute. When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Matter of Ma.H.*, 134 N.E.3d 41, 45-46 (Ind. 2019) (citation omitted), *cert. denied* (2020). To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> ….
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[8]     In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted). "[I]f the court finds that the allegations in a [termination] petition … are true, the court *shall* terminate the parent-child relationship." Ind. Code § 31-35-2-8(a) (emphasis added).

# Section 1 – Father has failed to establish that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal from or placement outside the home will not be remedied.

[9] Father asserts that the trial court clearly erred in concluding that a reasonable probability exists that the conditions that led to Child's removal or continued placement outside the home will not be remedied.[2] When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home. *In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005)*, *trans. denied*. Moreover, "the trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *E.M.*, 4 N.E.3d at 643. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the

---

[2] Father also challenges the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only one of the three circumstances listed. Because we find no error concerning the reasonable probability that the conditions prompting Child's removal will not be remedied, we need not address the reasonable probability of a threat to Child's well-being.

child." *J.T.*, 742 N.E.2d at 512. In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). The court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cty. Office of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).*

[10] Although the conditions that precipitated Child's initial removal were largely attributable to Mother, i.e., Mother's substance abuse, the initial allegations also listed Father's inability to protect Child from Mother. At the time, Father was incarcerated. He remained unable to provide a safe and sober environment for Child due to his own illegal drug use, his frequent stints of incarceration, and his failure to visit Child or engage in services designed to develop a bond with her. The following unchallenged findings address the reasonable probability that the conditions that led to Child's removal or continued placement away from Father will remain unremedied:[3]

> 9. The Court discredits the testimony of Father that he would be able to turn his life around should he be given another chance. The Court finds this unlikely because Father was given a chance to do services, but left the state instead[,] as well as the number [of] felony convictions Father has had[,] as well as the fact that

---

[3] In this excerpt, we refer to the parties as previously designated.

he has been arrested for more potential felonies in March 2019, which is more than a year after this case started.

10. The Court finds that the conditions that led to removal of Child will not be remedied with regard to Father because Father voluntarily left the state instead of doing the services required for reunification, that his voluntary departure from the state and subsequent incarceration caused DCS's inability to provide those services along with Father['s] history of incarceration[,] coupled with his current pending charges[,] demonstrate that Father has been given many chances to remedy the conditions of removal but he has chosen not to do so.

Appealed Order at 2-3.

[11]   As reflected in the unchallenged findings, the trial court found the most significant conditions to include Father's criminal history, his current criminal activity, his repeated incarcerations, and the serious nature of the felony charges pending against him.  As the findings reflect, the most significant *change* in conditions during the pendency of the case came when Father chose to move to Florida and essentially forgo the services that might have salvaged his parental relationship with Child.  At the factfinding, Father testified telephonically concerning his plan to return from Florida to complete his court-ordered services, get a job, and establish a bond with Child, all after being acquitted in Florida and not extradited to Ohio.  The trial court found this plan to be speculative and incredible, a sadly familiar refrain that portends a similar outcome, were Father afforded another chance to parent Child.  We decline Father's invitation to reweigh evidence and reassess credibility.  Father has failed to demonstrate clear error in the trial court's conclusion that there is a

reasonable probability that the conditions that led to Child's removal from or continued placement outside the home will remain unremedied.

## Section 2 – Father has failed to establish that the trial court clearly erred in concluding that termination is in Child's best interests.

Father concedes that "the evidence presented by the DCS regarding 'best interests' was at least partially legally sufficient to the extent the evidence supporting the determination that the reason for removal would not be remedied is determined to be supported." Appellant's Br. at 13. Because his concession is only partial, we will briefly address what we believe to be his argument concerning Child's best interests.

To determine what is in the best interests of a child, we must look at the totality of the circumstances. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). The trial court "need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *S.E. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 37, 47 (Ind. Ct. App. 2014), *trans. denied*. Although not dispositive, permanency and stability are key considerations in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). "A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children." *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012) (quoting *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*). Likewise, "the testimony of the

service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[14] Father claims that the trial court improperly terminated his rights based solely on evidence that the preadoptive foster parents can provide a "better" home for Child. *See In re R.A.*, 19 N.E.3d 313, 321 (Ind. Ct. App. 2014) (mere fact that children are in better home cannot be sole basis for termination), *trans. denied* (2015). Here, FCM Kimberly Lawrence testified that termination and adoption are in Child's best interests. Guardian ad litem Carol Ann Sublett testified that when Child saw Father at one of the family team meetings, Child told her that she did not know Father and did not want to be with him or visit him. Similarly, Child's therapist, Whitney Pelehowski, indicated that Child did not know or trust Father and did not want to have visits with him. She emphasized that Child was reticent to trust or develop bonds with people but that, as of the time of the factfinding hearing, she had developed a healthy bond with her preadoptive foster family, who earned her trust by setting boundaries and expectations. Community case manager Melanie Thomas worked with Child for about two years. Thomas described Child's negative behaviors and opined that instability and inconsistent parenting would likely lead to more behavior problems and rebellion. She observed that Child had matured in the two years that she had been in her preadoptive foster placement. The fact that the professionals involved with Child came to the same conclusion that Child was showing great improvement and maturation in the care of the foster parents and

that adoption is in her best interests does not mean that the trial court based its decision solely on this factor.

[15] The totality of the circumstances shows that Father has been incarcerated[4] off and on for approximately seven years of Child's life and has not spent any significant time with her since she was a baby. His criminal record includes four felony convictions, and at the time of the factfinding, he faced additional felony charges in Florida and Ohio. When he was not incarcerated, he used illegal drugs, including cocaine, marijuana, methamphetamine, and amphetamine. He was referred for substance abuse treatment, which he failed to complete. In fact, he did not complete any of his court-ordered services when he was outside the Indiana Department of Correction, and when he was afforded yet another opportunity to visit Child and develop a bond with her after his January 2019 release, he moved to Florida instead. He now asks for more time to demonstrate that he is earnest in his resolve to parent Child. Sadly, that ship has sailed. Child is nearly a teenager and deserves the stability and security that have eluded her for most of her life. Her preadoptive foster family, the only family she knows and trusts, has given her that stability and security. The totality of the circumstances supports the trial court's conclusion that termination is in Child's best interests. Based on the foregoing, we

---

[4] Our supreme court has emphasized that incarceration is an insufficient basis upon which to terminate a parent's rights. *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 644 (Ind. 2015) (citing *G.Y.*, 904 N.E.2d at 1264-66). However, the record here clearly shows that the trial court relied not only on what Father did not or could not do as a result of his incarceration but also on what he failed to do when he was not incarcerated.

conclude that Father has failed to demonstrate clear error in the trial court's decision to terminate his parental relationship with Child. Consequently, we affirm.

[16] Affirmed.

Robb, J., and Brown, J., concur.